**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No.: 1:23-cv-03307-DDD-MDB

KEISHAWN JACKSON, by and through his Next Friend LEAH B. JACKSON, and
LEAH B. JACKSON, individually,

      Plaintiffs,

v.

ACADEMY SCHOOL DISTRICT 20 BOARD OF EDUCATION;
ACADEMY SCHOOL DISTRICT 20;
PINE CREEK HIGH SCHOOL;
RYLAN DENNEY URBAN, individually;
AIMEE URBAN and TRENT URBAN, individually and as natural parents and guardians of
RYLAN DENNEY URBAN;
H.K., a minor, individually;
SUSANNA KOBLIAN and KIRBY ROBINSON and DARRELL KOBLIAN JR., individually
and as natural parents and guardians of H.K.;
AARON SALT, individually;
NICOLE KONZ, individually;
WILLIAM SULLIVAN, individually;
HEATHER CLONINGER, individually;
WILL TEMBY, individually;
and TOM LAVALLEY, individually,

      Defendants.

---

**DEFENDANTS' JOINT MOTION TO ENFORCE SETTLEMENT AGREEMENT**

---

Defendants Academy School District 20 Board of Education, Academy School District 20,

Pine Creek High School, Aaron Salt, Nicole Konz, William Sullivan, Heather Cloninger, Will

Temby, Tom LaValley, H.K. Susanna Prensner a/k/a Susanna Koblian, Kirby Robinson, Darrell

Kobilan Jr., Rylan Denney Urban, Aimee Urban, and Trent Urban respectfully move the Court to

enforce the settlement agreement reached among the parties on January 7, 2026, stating as follows:

## CERTIFICATE OF CONFERRAL

Pursuant to D.C.COLO.LCivR 7.1(a), counsel for Defendants Rylan Denney Urban, Aimee Urban, and Trent Urban, conferred with Plaintiff Leah Jackson regarding the relief sought in this motion. Ms. Jackson stated that Plaintiffs oppose the motion.

## INTRODUCTION

On January 7, 2026, all parties in this case attended a settlement conference with Magistrate Judge Maritza Dominguez Braswell. The settlement negotiations were successful, and all parties signed an Agreement & Material Terms of Settlement (the "Material Terms Agreement") that set forth the material terms of the parties' settlement agreement. The Material Terms Agreement contemplated a written settlement agreement to follow that would memorialize the terms of settlement. The Material Terms Agreement, however, makes clear that the parties intended their settlement agreement to be binding and enforceable as of January 7, 2026. The final sentence of the Material Terms Agreement states: "The Parties agree that is document is binding and enforceable until it is superseded by the final, executed, Settlement Agreement."

Following the settlement conference, the parties exchanged various drafts of a formal settlement agreement. Defendants proposed multiple drafts that incorporated the material terms of the settlement set forth in the Material Terms Agreement. Plaintiffs rejected every such draft. Instead, Plaintiffs have repeatedly insisted on including language within the settlement agreement that would materially alter the material terms in the Material Terms Agreement. Because Defendants are not willing to modify the material terms of the settlement reached on January 7, 2026, they now move the Court to enforce the settlement as set forth in the Material Terms Agreement.

2

## BACKGROUND

The settlement conference on January 7, 2026, was held in person in Colorado Springs. (Decl. of Trent Urban, ¶ 2, attached as Exhibit A.) Defendants were all represented by counsel. Plaintiff Leah Jackson appeared *pro se* on behalf of both herself and her son, Plaintiff Keishawn Jackson.

Magistrate Judge Braswell facilitated the negotiations among the parties. Over the course of the day, she repeatedly met and spoke with the parties separately. Near the end of the day, a draft of the Material Terms Agreement was prepared by Magistrate Judge Braswell and her staff. (*Id.*, ¶ 3.) The initial draft was revised one or more times. (*Id.*) Thereafter, the parties signed the Material Terms Agreement.[1] (*Id.*, ¶ 4.) A copy of the Material Terms Agreement, as executed, is attached as Exhibit B.  (*See id.*, ¶ 5.)

Paragraph 6 of the Material Terms Agreement sets forth the following regarding non-disparagement: "The Settlement Agreement shall contain a non-disparagement clause prohibiting any Party from making disparaging statements about any other Party, or any of their related businesses to be identified in the Settlement Agreement." (Material Terms Agreement at 2–3.)

---

[1] The Material Terms Agreement was signed by Plaintiff Leah Jackson, Defendant H.K., Defendant Susanna Prensner a/k/a Susanna Kobilan, Defendant Darrell Kobilan Jr., Attorney Charles D. Rupprecht (counsel for the "H.K. Defendants"), Defendant Rylan Denney Urban, Defendant Aimee Urban, Defendant Trent Urban, Daniel B. Miller (counsel for the "Urban Defendants"), Academy School District 20 Superintendent Jinger Haberer (on behalf of Academy School District 20 and the other ASD20 Defendants), and Caroline Gecker (counsel for the ASD20 Defendants). (*See* Decl. of Trent Urban, ¶ 4.)

Defendant Kirby Robinson did not sign the Material Terms Agreement because he had to leave the settlement conference shortly before it was ready for the parties' signature. Mr. Robinson, however, has assented to all the terms in the Material Terms Agreement.

Per the Material Terms Agreement, counsel for the ASD20 Defendants circulated an initial draft of a formal written settlement agreement on January 15, 2026. The initial draft's non-disparagement provision directly tracked the language of paragraph 6 of the Material Terms Agreement. Plaintiffs, however, have repeatedly rejected signing a settlement agreement that simply incorporated the language of the Material Terms Agreement.[2]

Instead, Plaintiffs sought to narrow the parties' agreement regarding non-disparagement set forth in the Material Terms Agreement. On February 3, 2026, Plaintiffs proposed limiting the non-disparagement provision such that the parties would only be prohibited from making "disparaging knowingly false statements of fact" regarding other parties or their related businesses. Plaintiffs also proposed adding the following qualification to the non-disparagement clause: "Nothing in this clause shall limit Plaintiffs' rights or remedies for defamation, false light, or other applicable claims, nor shall this clause be construed to waive Plaintiffs' constitutional or statutory rights."

Later, on February 12, Plaintiffs proposed different additions to the non-disparagement clause, including the following:

> For avoidance of doubt, nothing in this Agreement shall be interpreted to restrict, limit, penalize, or chill any Party's legally protected speech, legally protected communications, or legally protected participation in governmental, administrative, or judicial processes.
>
> Nothing in this paragraph shall be interpreted to limit Plaintiffs' rights to speak truthfully about their own experiences, to engage in advocacy on matters of public

---

[2] Following the settlement conference, Defendants identified the related businesses as "WireNut Home Services, Inc.; WN, LLC; URG, LLC; Lifestyle Wellness & Consulting L.L.C.; Health Insurance consultations LLC, DBA Lighthouse Group; 3 Cord Meadows LLC; and all of those entities' parents, subsidiaries, joint venturers, and affiliates."

concern, to file complaints, to participate in investigations, or to take any action permitted by law.

The Urban Defendants and the H.K. Defendants rejected Plaintiffs' proposed revisions because they would substantively modify the material terms of settlement as set forth in the Material Terms Agreement.

Magistrate Judge Braswell held a status conference on March 4, 2026. On the record, the parties discussed their communications following the settlement conference as well as potential resolution to the impasse regarding the non-disparagement clause. Notably, Ms. Jackson acknowledged that the non-disparagement clause was the only part of the draft formal settlement agreement to which the parties had not reached resolution. Specifically, Ms. Jackson stated that she did not object to the inclusion of Defendants' businesses, and the only remaining sticking point among the parties was Plaintiffs' proposal that the clause be limited to prohibiting "knowingly false statements of fact." Magistrate Judge Braswell and the parties discussed potential resolutions to Plaintiffs' proposal, but the status conference ended without an agreement among all parties.

After the status conference, and despite the enforceability of the Material Terms Agreement, Defendants attempted to resolve the impasse regarding the non-disparagement provision by offering Plaintiffs a compromise regarding their requested revisions. Plaintiffs rejected Defendants' compromise. Because the parties have been unable to agree on a form to memorialize the settlement agreement, Defendants now seek to enforce the settlement evidenced by the Material Terms Agreement.[3]

---

[3] If the Court does not enforce the parties' settlement agreement, the H.K. Defendants and the Urban Defendants will renew their motions for attorneys' fees. (*See* Doc. 139 and Doc. 143.)

## ARGUMENT

### I.      Applicable Law

#### A.      Courts Possess Authority to Enforce Settlement Agreements.

"A trial court has the power to summarily enforce a settlement agreement entered into by the litigants while the litigation is pending before it." *United States v. Hardage*, 982 F.2d 1491, 1496 (10th Cir. 1993). When deciding issues involving formation, construction, and enforceability of a settlement agreement, federal courts apply state contract law. *United States v. McCall*, 235 F.3d 1211, 1215 (10th Cir. 2000). Under Colorado law, the essential elements of an agreement to settle a case are "a manifestation of agreement (an offer and acceptance) on payment, release, and case dismissal terms (the consideration) between parties who have the capacity and authority to agree." *Gates Corp. v. Bando Chem. Indus., Ltd.*, 4 F. App'x 676, 685–86 (10th Cir. 2001).

For a settlement agreement to be binding and enforceable, there must be a meeting of the minds as to its terms and conditions. *H.W. Houston Constr. Co. v. Dist. Court*, 632 P.2d 563, 565 (Colo. 1981). Before the Court can find that an agreement has been reached, "it must appear that further negotiations are not required to work out important and essential terms." *Joseph Brazier, LTD. v. Specialty Bar Prod.'s Co.*, No. 06-cv-01416-WDM-KLM, 2009 WL 690308, at *2 (D. Colo. March 12, 2009). "The terms of the settlement agreement must be clear, unambiguous, and capable of enforcement." *City & Cnty. of Denver v. Adolph Coors Co.*, 813 F. Supp. 1476, 1479 (D. Colo. 1993). Whether negotiations are sufficiently definite and final to create a binding contract is to be decided by the finder of fact. *Shoels v. Klebold*, 375 F.3d 1054, 1062 (10th Cir. 2004). "[E]vidence of the parties' conduct, their oral statements and their writings, and other evidence illuminating the circumstances surrounding the making of an agreement are admissible

to clarify the intent and purpose of the parties." *I.M.A. v. Rocky Mountain Airways, Inc.*, 713 P.2d 882, 888 (Colo. 1986) (citations omitted).

Later dissatisfaction with the terms of an agreement is insufficient to set it aside. *Brackens v. Sedgwick Claims Mgmt. Servs., Inc.*, No. 07-cv-01953-REB-KMT, 2008 WL 906121, at *3 (D. Colo. Apr. 1, 2008). "The law favors compromise and settlement and such resolution will typically be sustained by the court." *Citywide Bank of Denver v. Herman*, 978 F. Supp. 966, 977 (D. Colo. 1997) (citing *R.T.C. v. Avon Center Holdings, Inc.*, 832 P.2d 1073, 1075 (Colo. App. 1992)).

## B.    Confidentiality of Alternative Dispute Resolution Proceedings.

D.C.COLO.LCivR. 16.6 governs alternative dispute resolution in civil cases. Subsection (e) of this rule provides as follows:

> **Confidentiality.** A party or the magistrate judge in an alternative dispute resolution proceeding shall not voluntarily disclose or through discovery or compulsory process be required to disclose any information concerning any communication provided in confidence to the magistrate judge in connection with an early neutral evaluation or other alternative dispute resolution proceeding.

D.C.COLO.LCivR. 16.6(e).[4]

---

[4] Because magistrate judges presiding over settlement conferences often receive communications from the parties in confidence, it is appropriate for them to recuse themselves if a party later files a motion to enforce a settlement. *See Simpson v. Castro-Loya*, No. 20-CV-02287-DDD-NRN, 2022 WL 20542971, at *1 (D. Colo. Mar. 29, 2022) (Magistrate Judge Varholak recused himself from consideration of a motion to enforce because of his prior efforts at mediating the case), *report and recommendation adopted*, 2022 WL 20542967 (D. Colo. July 20, 2022); *Email on Acid, LLC v. 250ok, Inc.*, No. 1:19-CV-03496-RMR-KLM, 2023 WL 2813265, at *2 (D. Colo. Apr. 6, 2023) (Magistrate Judge Hegarty recused himself due to his involvement in a settlement conference).

## II.    Discussion

As set forth in the Material Terms Agreement, the parties reached an agreement on all material terms of settlement at the settlement conference on January 7, 2026. The parties intended the settlement agreement that they entered that day to be binding and enforceable. Although the parties contemplated executing a formal written settlement agreement that would supersede the Material Terms Agreement, they understood that the terms of the Material Terms Agreement would control the parties' settlement until and unless it was superseded.

The Material Terms Agreement contained all material terms necessary to effectuate a binding settlement agreement. The Material Terms Agreement sets forth an agreement for payment, release of claims, and case dismissal terms, which are the essential elements of an agreement to settle a case. *See Gates Corp.*, 4 F. App'x at 685–86. It also contains a non-disparagement provision, which is commonly found in settlement agreements.

The fact that the Material Terms Agreement contemplated a formal document to memorialize the terms of the settlement does not render the Material Terms Agreement unenforceable. This Court has regularly enforced settlement agreements reached at settlement conferences even when the parties do not thereafter execute a formal settlement agreement. *See, e.g.*, *Alzado-Lotz v. Mut. Sec., Inc.*, No. 20-CV-02928-DDD-MEH, 2024 WL 3836003, at *2 (D. Colo. May 15, 2024) (Domenico, J.); *GSL of ILL, LLC v. Kroskob*, No. 11-CV-00939-WYD-KMT, 2012 WL 10311, at *4 (D. Colo. Jan. 3, 2012); *Email on Acid, LLC*, 2023 WL 2813265, at *2. Unlike here, some of these cases did not even have written settlement agreements, and yet those verbal settlement agreements were still enforced. The existence of the Material Terms Agreement

in this case removes any doubt whether there was a meeting of the minds regarding the material terms of settlement.

Plaintiffs' dissatisfaction with the language of the non-disparagement provision in the Material Terms Agreement is not grounds to set aside the parties' settlement. In the Material Terms Agreement, the parties agreed to a typical non-disparagement provision without any qualifiers that would narrow the scope of what conduct would be prohibited. Defendants were willing to incorporate the non-disparagement provision into the final settlement agreement nearly verbatim. Plaintiffs' desire to narrow the scope of the non-disparagement provision substantively and materially after signing the Material Terms Agreement does not demonstrate that the parties did not reach a binding, enforceable settlement at the settlement conference. As such, the Court should enforce the parties' settlement reached on January 7, 2026.

## CONCLUSION

For all the foregoing reasons, Defendants ask the Court to enforce the parties' settlement agreement and enter an order that will give effect to the terms thereof.

DATED this 10th day of April, 2026.

s/ Caroline G. Gecker
Michael W. Schreiner
Caroline G. Gecker
CAPLAN & EARNEST LLC
3107 Iris Avenue, Suite 100
Boulder, CO 80301
Telephone: (303) 443-8010
Email: mschreiner@celaw.com
        cgecker@celaw.com

*Attorneys for Defendants Academy School District 20 Board of Education; Academy School District 20; Pine Creek High School; Aaron Salt; Nicole Konz; William Sullivan; Heather Cloninger; Will Temby; Tom LaValley*

9

s/ Charles D. Rupprecht
Charles D. Rupprecht
Matthew L. Schneider
BUFKIN & SCHNEIDER
2 N. Nevada, Suite 1140
Colorado Springs, CO 80903
Telephone: 719-247-3028
Email: matthew@bbmslaw.com
      charly@bbmslaw.com

*Attorneys for Defendants H.K.,
Susanna Prensner a/k/a Susanna Kobilan
Kirby Robinson, and Darrell Kobilan Jr.*

s/ Andrew E. Swan
Andrew E. Swan
Daniel B. Miller
LEVENTHAL SWAN TAYLOR TEMMING PC
3773 Cherry Creek North Drive, Suite 710
Denver, CO 80209
Telephone: (720) 699-3000
Email: aswan@lstt.law
      dmiller@lstt.law

*Attorneys for Defendants Trent Urban,
Aimee Urban, and Rylan Denney Urban*

## CERTIFICATE OF SERVICE

I certify that on April 10, 2026, a true and correct copy of the foregoing **DEFENDANTS'
JOINT MOTION TO ENFORCE SETTLEMENT AGREEMENT** was filed with the  U.S.
District Court for the District of Colorado' CM/ECF system, which serviced notice via email to
the following:

Leah Jackson (via email)

*Plaintiff*

Michael W. Schreiner
Caroline G. Gecker
Caplan & Earnest LLC
3107 Iris Avenue, Suite 100
Boulder, CO 80301
Phone: (303) 443-8010
Email: mschreiner@celaw.com
        cgecker@celaw.com

*Attorneys for Defendants Academy School
District 20 Board of Education, Academy
School District 20, Pine Creek High School,
Aaron Salt, Nicole Konz, William Sullivan,
Heather Cloninger, Will Temby, and Tom
LaValley*

Charles D. Rupprecht
Matthew L. Schneider
Bufkin & Schneider Law, LLC
2 N. Nevada Ave., Suite 1140
Colorado Springs, CO 80903
Phone: (719) 247-3028
Email: charly@bbmslaw.com
        matthew@bbmslaw.com

*Attorneys for Defendants H.K., Susanna
Kobilan, Kirby Robinson, and Darrell
Kobilan Jr.*

*/s/ Andrew E. Swan*
Andrew E. Swan

11